**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CESAR AUGUSTO DE SOUZA ALMEIDA,

Petitioner,

v.

CRAIG A. LOWE, *Warden, Pike County Correctional Facility, et al.*,

Respondents.

No. 4:26-CV-01750

(Chief Judge Brann)

**MEMORANDUM OPINION**

**SEPTEMBER 30, 2026**

## I. BACKGROUND

Cesar Augusto De Souza Almeida is a current detainee of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE").[1] De Souza Almeida entered the United States of America in 2022.[2] On June 15, 2026, De Souza Almeida was arrested by ICE, and he has remained in ICE custody since that date.[3] De Souza Almeida is currently detained at the Pike County Correctional Facility located within the Middle District of Pennsylvania.[4]

De Souza Almeida first filed a 28 U.S.C. § 2241 petition seeking release from custody or a bond hearing, asserting that his continued detention without a bond

---

1 Doc. 1, at 2.
2 *Id.*
3 *Id.*
4 Doc. 1-2, at 1.

hearing violated his due process rights.[5] The Court granted that motion, ordering Respondents to either release De Souza Almeida or provide him with an individualized bond hearing.[6] The Court further instructed that, should De Souza Almeida be denied bond, Respondents must file a status report providing a "detailed explanation of the reasons for such denial, beyond simply stating that [De Souza Almeida] was found to be a danger or flight risk."[7]

De Souza Almeida received a bond hearing on July 29, 2026, in front of Immigration Judge ("IJ") Leila Mullican.[8] At that hearing, De Souza Almeida, represented by counsel, noted that he had remained in Philadelphia since his entry into the United States of America, was gainfully employed, had a sponsor who was a United States Citizen, and had no prior contacts with law enforcement.[9] However, De Souza Almeida submitted no evidence regarding prior tax payments or applications for relief. Ultimately, the IJ determined that De Souza Almeida presented a flight risk and denied his request for bond.[10] The IJ explained that "[De Souza Almeida] never filed an application for relief before the court or before U-S-C-I-S. The court finds he has not established any prima facia . . . eligibility for relief.

---

5 Doc. 1, at 3.
6 Doc. 12, at 1.
7 *Id*. at 1-2.
8 Doc. 16, at 1.
9 Doc. 18-3, at 3-6.
10 *Id*. at 5; Doc. 18-2, at 3.

He has not filed anything with this court to show that he's been complying with the tax laws in the United States when he's been working lawfully."[11]

De Souza Almeida now moves for this Court to enforce its judgment, asserting that the analysis provided by the IJ was insufficient to satisfy the requirements of the Due Process Clause.[12] Respondents, however, first argue that 8 U.S.C. § 1226(e) strips this Court of jurisdiction to review the IJ's bond hearing determination,[13] and that De Souza Almeida failed to exhaust his administrative remedies.[14] Second, they assert that De Souza Almeida received an individualized bond hearing in accordance with the Court's Order, and that De Souza Almeida merely seeks to relitigate the merits of the hearing.[15]

This motion is now ripe for disposition. For the following reasons discussed below, the motion will be granted.

## II. DISCUSSION

### A. Jurisdiction

Title 8 U.S.C. § 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."[16]

---

[11] Doc. 18-3, at 5.
[12] Doc. 13, at 4-6.
[13] Doc. 15, 5-7.
[14] Doc. 15, 7-9.
[15] Doc. 15, 10-14.
[16] 8 U.S.C. § 1126(e).

Despite that rather definitive language, the United States Court of Appeals for the Third Circuit has explicitly held that "[n]othing in 8 U.S.C. § 1226(e) prevents [courts] from deciding whether the immigration officials had statutory authority to impose mandatory detention" and that "Section 1226(e) does not limit habeas jurisdiction over constitutional claims or questions of law."[17] Stated differently, although courts "lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, [they] may review whether the bond hearing was fundamentally unfair."[18]

Additionally, beyond a court's ability to examine the constitutional adequacy of a bond hearing, it is well established that a "court has the inherent power to enforce its own orders."[19] Courts therefore have "continuing jurisdiction to address alleged noncompliance with [a] conditional writ of habeas corpus."[20]

Here, De Souza Almeida asserts that his hearing failed to comply with the Court's order mandating that De Souza Almeida receive a bond hearing in line with fundamental notions of due process.[21] These arguments are excepted from § 1226(e)'s bar on review of bond determinations, as the Court is not divested of

---

17 *Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) (quoting *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011)).

18 *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).

19 *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 194 (3d Cir. 2020).

20 *Gibbs v. Frank*, 500 F.3d 202, 205 (3d Cir. 2007) (citing *Phifer v. Warden,* 53 F.3d 859, 865 (7th Cir. 1995)).

21 Doc. 13, 4-5.

jurisdiction to consider whether the bond hearing complied with the Court's own order and whether it was fundamentally fair.[22] Therefore, Respondents' jurisdictional arguments fail.

Respondents additionally assert that De Souza Almeida has failed to exhaust his administrative remedies related to the bond hearing, and that, therefore, this Court should decline to review the motion.[23] As other courts have discussed, whether an individual must exhaust administrative remedies by appealing a denial of bond is an "area of unsettled law in the Third Circuit and in this District" and "there are several decisions in this district reaching conflicting conclusions about whether exhaustion is required."[24]

The Court need not determine whether exhaustion of administrative remedies is required in this matter because, even when exhaustion is necessary, courts will not enforce that requirement if exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm."[25] As it relates to an appeal of the denial of bond, futility is apparent because "'it is not at all clear that the BIA could evaluate the legality of the IJ's bond

---

22 *See Ghanem*, 2022 WL 574624, at *2.

23 Doc. 18, at 9.

24 *Shonhai v. Lowe*, No. CV 3:24-229, 2026 WL 538865, at *10 (M.D. Pa. Feb. 26, 2026).

25 *Id.* (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)).

determination in relation to [a district court's order]—the BIA has, for example, consistently refused to reach and decide constitutional questions.'"[26]

Additionally, to the extent that De Souza Almeida would be required to exhaust administrative remedies, such exhaustion would not apply to this Court's review of its own order when determining if Respondents complied therewith. Accordingly, the Court has jurisdiction to consider De Souza Almeida's motion.

**B. Merits**

Turning to the merits of De Souza Almeida's motion, Petitioner argues that his bond hearing was deficient and, therefore, did not comply with the Court's prior Order nor fundamental notions of due process.[27] Respondents assert that the IJ sufficiently considered Petitioner's circumstances and that the proceeding was not procedurally deficient.

"Throughout all phases of deportation proceedings, petitioners must be afforded due process of law."[28] The Due Process Clause guarantees individuals "an opportunity to be heard at a meaningful time and in a meaningful manner."[29] "This guarantee comprises three key protections: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity

---

[26] *Id.* (quoting *Y.S.G. v. Andrews*, No. 25-cv-1884, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025)).

[27] Doc. 13, 4-5.

[28] *Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 213 (3d Cir. 2017).

[29] *Id.* (internal quotation marks omitted).

to make arguments on his or her own behalf; and (3) an individualized determination of his or her interests."[30] "In other words, petitioners must receive a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf."[31]

"[A] 'decisionmaker must actually consider the evidence and argument that a party presents,' and denies due process when it acts 'as a mere rubber-stamp.'"[32] "A bond hearing is individualized 'if it is not so arbitrary that it would offend fundamental tenets of due process[,'] 'if there is a discernible rational basis for the underlying administrative decision, and [if] the immigration judge applies the correct legal standards.'"[33]

For a bond hearing to be fundamentally fair, any evidence relied upon by an IJ "must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community."[34] "'Mechanistic reliance on factors that are common to all § 1226([a]) detainees will not suffice.'"[35] The Board of Immigration Appeals ("BIA") has enumerated proper and relevant

---

30 *Id.* (brackets and internal quotation marks omitted).

31 *Id.* (internal quotation marks omitted).

32 *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 555 (D.N.J. 2026) (quoting *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001), *superseded by statute on other grounds*).

33 *Id.* at 555 (quoting *Vasquez-Rosario v. Noem*, No. 25-7427, 2026 WL 395711, at *2 (E.D. Pa. Feb. 12, 2026)).

34 *Santos v. Lowe*, No. 1:18-CV-1553, 2020 WL 4530728, at *3 (M.D. Pa. Aug. 6, 2020) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).

35 *Id.* (quoting *Wilkins v. Doll*, No. 1:17-CV-2354, 2018 WL 3388032, at *2 (M.D. Pa. July 12, 2018)).

considerations for an IJ to use when determining whether a noncitizen is a danger to the community or a risk of flight, including, *inter alia*, whether the alien has a fixed address in the United States, the alien's family ties in the United States, and the alien's employment history.[36]

Additionally, "[t]o make out a claim for a violation of due process, the applicant must prove a violation of one of the three [key protections], as well as an initial showing of substantial prejudice."[37] "Substantial prejudice can be met by 'showing that the infraction has the *potential* for affecting the outcome of the deportation proceedings.'"[38]

Here, De Souza Almeida's bond hearing was constitutionally deficient because the IJ failed to provide an individualized determination before deeming him

---

36 *Castillo Reyes v. Rose*, 820 F. Supp. 3d 343, 352 n.7 (E.D. Pa. 2026). Specifically, these considerations are known as the *Guerra* factors, which the Ninth Circuit has held are probative of danger to the community or risk of flight. *See Martinez v. Clark*, 124 F. 4th 775, 786 (9th Cir. 2024) (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The *Guerra* factors an IJ may consider include "any or all of the following: (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States." *Id.* Courts in this circuit have begun to recognize that such factors are proper considerations in determining dangerousness and risk of flight. *See, e.g., Castillo Reyes*, 820 F. Supp. 3d at 352 n.7; *Avilov v. McShane*, No. 26-2431, 2026 WL 1947617, at *2 (E.D. Pa. July 6, 2026); *Nasimov v. Jamison*, No. 25-7420, 2026 WL 94615, at *6 n.10 (E.D. Pa. Jan. 13, 2026); *Bueno v. O'Neill*, No. 26-304, 2026 WL 413315, at *7 n.11 (E.D. Pa. Feb. 13, 2026); *Dia v. Mullin*, No. 4:26-CV-01418, 2026 WL 1708513, at *5 n.54 (M.D. Pa. June 12, 2026) (Brann, J.).

37 *Julney v. Att'y Gen. U.S.*, No. 21-2034, 2022 WL 2964799, at *2 (3d Cir. July 27, 2022) (citing *Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005)).

38 *Id.* (quoting *Serrano-Alberto*, 859 F.3d at 213) (emphasis in original).

a flight risk. In the bond hearing, the IJ relied on only two considerations: first, De Souza Almeida had never applied for relief before an immigration court or USCIS, and was unable to show that he would be eligible for such relief; and second, De Souza Almeida submitted no evidence that he had paid his taxes while working lawfully.[39] In her written order, the IJ added that De Souza Almeida submitted no proof of his legal eligibility for employment.[40]

The Court considers each reason in order. First, with respect to De Souza Almeida's lack of any application for relief, the Court recognizes that an IJ may consider a noncitizen's failure to previously apply for immigration relief and their subsequent ineligibility.[41] That said, the absence of a prior application does not itself establish flight risk; the inquiry must remain individualized.[42] The failure to apply for relief is a relevant factor insofar as it speaks to a petitioner's likelihood of attending future proceedings and complying with future orders.[43] Put differently, a petitioner's failure to apply for relief can suggest an increased risk of escaping or

---

[39] Doc. 18-2, at 3.

[40] *Id*.

[41] *See Matter of A-L-S-*, 29 I. & N. Dec. 794, 796-97 (BIA 2026); *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (BIA 2020) (citing *Matter of Andrade*, 19 I. & N. Dec. 488, 490 (BIA 1987)) (noting that in addition to the *Guerra* factors, the IJ "may also consider the likelihood that relief from removal will be granted in determining whether an alien warrants bond.").

[42] *See De Souza v. Soto*, No. 25-18734, 2026 WL 102946, at * (D.N.J. Jan. 14, 2026) (upholding a flight risk determination where the petitioner's delayed asylum application was considered together with his lack of fixed address, employment verification, and meaningful ties to the United States); *See also N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03007, 2026 WL 1045196, at *8 (C.D. Cal. Apr. 15, 2026) (noting that the petitioner's unresolved claims for relief "does not mean [the] noncitizen cannot be trusted to appear for future court proceedings on that basis alone").

[43] *R-A-V-P-*, 27 I. & N. Dec. at 805 (citing *Andrade*, 19 I. & N. Dec. at 490).

delaying future removal actions. But those concerns are not present here. De Souza Almeida has been continuously employed by the same employer,[44] has lived in Philadelphia the entire time that he has resided in the United States,[45] and has produced attested correspondence signaling his intention to comply with future orders and proceedings.[46] These mitigating factors, presented before the IJ as submitted evidence and during the hearing itself, indicate that De Souza Almeida's failure to apply for relief is nearly irrelevant.

Furthermore, De Souza Almeida's lack of tax documentation does not support the determination that he presented a flight risk. Even the failure to pay taxes "does not provide the evidentiary support constitutionally required to deny a noncitizen's request for release on bond . . . ."[47] Any relevance that tax documents would offer, mainly to inform the IJ of De Souza Almeida's employment, community ties, or his sponsor's level of support, are all plainly addressed in his present materials. Whether in the form of his employer's Employment Declaration, numerous statements in support, or his Declaration of Sponsorship, De Souza Almeida presented enough evidence to render his lack of submitted tax documentation as irrelevant. And for

44 Doc. 13-1, at 4.
45 Doc. 18-3, at 3-4.
46 Doc. 13-3, at 3.
47 *Ramos v. Perry*, 1:26-cv-917, 2026 WL 174870, at *6 (E.D. Va. Jun. 17, 2026) (citing *Lemus Crispin v. Bondi*, 1:26-cv-191, 832 F.Supp.3d 534, 545 (E.D. Va. Mar. 18, 2026)); *See also Chavarria Mejia v. Crawford*, 1:26-cv-253, 2026 WL 819603, at *6 (E.D. Va. Mar. 25, 2026) (agreeing that a petitioner's failure to pay taxes for 22 years is a potentially valid concern, but not one related to his risk of flight (internal quotations omitted)).

similar reasons, the IJ cannot rely on De Souza Almeida's failure to prove his legal eligibility for employment. Regardless of whether De Souza Almeida had been working in the United States without authorization, "no reasonable inference of flight risk can be drawn from a steady history of employment, authorized or not."[48] Whatever relevance, if any, that such documents would have towards De Souza Almeida's status as a flight risk is severely undercut by the submitted record.

As discussed, the BIA has set forth numerous factors relevant to a bond determination.[49] Of course, an IJ "has broad discretion . . . as long as the decision is reasonable."[50] But here, the Court does note that the IJ failed to reasonably rely on *any* of those enumerated factors in deeming De Souza Almeida to be a flight risk. Therefore, the IJ's determination that De Souza Almeida was a flight risk was not supported by legitimate evidence or considerations. While this Court may not second guess the IJ's determination by "reweigh[ing] the evidence,"[51] the absence of any

---

48 *Ramos*, 2026 WL 174870, at *6 (citing *Mendez Trigueros v. Guadian, et al.*, 1-26-cv-205, Dkt. No. 13, at 6 (E.D. Va. Feb. 18, 2026)). Courts have also noted that "unauthorized employment is inextricably related to the unlawful status that has caused his detention and request for a bond hearing in the first place." *Id*. Further, "[i]f an Immigration Judge could consider a noncitizen's unauthorized employment—which typically accompanies a noncitizen's status—'discretionary detention under § 1226(a) … would become a *de facto* mandatory § 1225 detention.'" *Id*. (emphasis in original).

49 *Guerra*, 24 I. & N. Dec. at 40.

50 *Id*.

51 *Collado Nunez v. Oddo*, No. 25-CV-143J, 2026 WL 1170973, at *9 (W.D. Pa. Apr. 30, 2026) (quoting *Ghanem*, 2022 WL 574624, at *2, 3) (internal quotations omitted).

legitimate support for the IJ's decision means "the exercise of discretion in denying bond was so arbitrary that it . . . offend[ed] fundamental tenets of due process."[52]

Because the IJ made no meaningful assessment of De Souza Almeida's circumstances before asserting that he was a flight risk, the IJ's determination was insufficiently individualized to provide due process. That is the sort of deficiency that changes entirely the composition of the proceeding. An individualized analysis of De Souza Almeida's circumstances could have led to a different determination than the assumption that he was a flight risk. That deficiency, at the very least, potentially affected the outcome of the proceeding. Therefore, the Court finds that the prejudice requirement is met.

Consequently, the Court must conclude that the bond hearing below violated De Souza Almeida's due process rights and failed to comply with this Court's Order. This Court will therefore grant De Souza Almeida's motion.

### C. Remedy

Having concluded that De Souza Almeida's bond hearing failed to comply with the Court's Order and was constitutionally deficient, this Court must determine what remedy is appropriate. Respondents have "now violated [De Souza Almeida]'s" due process rights twice: first when [Respondents] initially detained

---

[52] *Romero v. Ogle*, No. 1:21-CV-01192, 2021 WL 8362027, at *3 (M.D. Pa. Nov. 12, 2021) (quoting *Serrano-Vargas v. Lowe*, No. CV 3:17-0801, 2019 WL 3003382, at *2 (M.D. Pa. July 10, 2019)).

him unlawfully under § 1225(b), and then again when [Respondents] deprived him of a constitutionally adequate bond hearing."[53] Moreover, De Souza Almeida has been detained by ICE for over three months.[54] Thus, "release is the only just remedy."[55] The Court therefore finds that the appropriate remedy in this matter is to direct that Respondents release De Souza Almeida from custody.

## III. CONCLUSION

Petitioner's motion to enforce the Court's July 22, 2026 Order is granted. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

53 *Zheng v. Rokosky*, No. 26-CV-01689, 2026 WL 800203, at *8 (D.N.J. Mar. 23, 2026).
54 Doc. 1, at 2.
55 *Zheng*, 2026 WL 800203, at *11.